## KENNETH A. ELAN
### ATTORNEY AT LAW
217 Broadway, Suite 603
New York, NY 10007
(212) 619-0261
Fax (212) 385-2707
Elanfirm@Yahoo.com

December 4, 2012

**VIA E-FILING & FIRST CLASS MAIL**

Hon. Raymond J. Dearie
U.S. District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   **Mordechai Palace v. I.C. System, Inc.**
> **Case No. 12-CV-5604 (RJD)**

Dear Judge Dearie:

I am the attorney for defendant I.C. System, Inc. ("IC") in the above-referenced Action. In accordance with your Individual Rules of Practice, request is hereby made for a pre-motion conference to discuss and consider a motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. IC is a debt collector within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq*. In his Complaint, a copy of which is attached, plaintiff alleges that he is a citizen of New York, residing within this District. He alleges that on a date unspecified, IC attempted to collect a consumer debt by leaving "many messages on [his] answering machine on numerous occasions." Complaint, ¶ 11. Plaintiff alleges that on 9 occasions within the past year, IC made 9 telephone calls to an unauthorized wireless number belonging to him. Complaint, ¶ 12. Plaintiff further alleges "upon information and belief," that IC used an automatic dialer or prerecorded message and failed to identify itself as a debt collector. Complaint, ¶¶ 13, 14. Accordingly, plaintiff alleges that IC violated Sections 1692e(10) and 11 of the FDCPA by failing to indicate that the messages were from a debt collector. Plaintiff further alleges that IC violated Section 1692f(5) by causing plaintiff's telephone to incur charges for IC's collection communications. Complaint, ¶ 22.

In a second cause of action, plaintiff alleges that IC violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 *et seq.*, by initiating the telephone calls to plaintiff's wireless telephone number using an artificial and/or pre-recorded message without first obtaining his consent. Complaint, ¶ 34. Plaintiff further alleges that IC violated the TCPA by failing to identify itself in the messages left on his wireless telephone. Complaint, ¶ 35. Plaintiff alleges that by failing to leave its legal name in the messages, IC violated 47 C.F.R. 64.1200(b)(1) as promulgated by the Federal Communications Commission. Complaint, ¶ 49.

The basis for IC's motion is the failure of plaintiff to plead *facts* sufficient to state a claim for relief. It is well settled that a party cannot rely, as plaintiff does in this case, on mere conclusory allegations. Instead, he is required to plead *facts* to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Here, neither cause of action sets forth basic information such as the dates and times when IC's representatives allegedly called plaintiff, or the messages, if any, that were left in his voicemail. Furthermore, plaintiff does not set forth the basis for his belief that IC used an automatic dialer or prerecorded message. A plaintiff seeking to state a claim under the FDCPA is required to particularize these allegations. *Gorman v. Wolpoff & Abramson, LLP*, 370 F. Supp.2d 1005, 1013 (N.D. Cal. 2005); *Hoover v. Midland Credit Mgmt. Inc.*, 10-CV-06856 (E.D. Penn. March 30, 2012).[1] Since the Complaint does not allege this basic information, no valid claim is stated under the FDCPA. Rather, it is deficient as a matter of law.

A cause of action under the TCPA is subject to the same pleading requirements. Hence, in order to state a claim under the TCPA, plaintiff was required to allege the dates the calls were made; the number of calls made; the times of the day when the calls were made; the cellular telephone number allegedly called by IC; the basis for his belief that IC used an automatic dialer; and the basis for his belief that IC left a prerecorded message. Again, the failure by plaintiff to set forth this basic information is fatal to his TCPA claim. *See, Bentley v. Bank of America*, 773 F. Supp.2d 1367, 1374 (S.D. Florida 2011), where the court held that the plaintiff's allegation that the defendant used an automatic dialer to "place numerous telephone calls to the plaintiff's cellular telephone" failed to give the defendant adequate notice of the precise nature of the violation claimed. *See also, Twombly*, 550 U.S. at 555, where the Supreme Court held that under federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *cf., Versteeg v. Bennett*, 775 F. Supp.2d 1316, 1319 (D. Wyo. 2011) (on motion for partial summary judgment the plaintiff submitted an affidavit that included the text of a voicemail message received from the defendant's automatic dialer). That aside, per the requirements set out by the Supreme Court in *Cort v. Ash*, 422 U.S. 66 (1975),there is no implied cause of action for violating FCC Rules.

Since the Complaint fails to provide the information required to plead a valid cause of action under the FDCPA and TCPA and no implied cause of action is stated for violating FCC Rules, IC verily believes that a motion pursuant to Rule 12(b)(6) is meritorious.

Respectfully submitted,

Kenneth A. Elan, Esq.

KAE:kc
encls.
Adam Fishbein, Esq. (w/encls.)

---

[1] A copy of the decision in *Hoover* is annexed.

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  NOV 13 2012  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MORDECHAI PALACE
on behalf of himself and
all other similarly situated consumers

Plaintiff,

-against-

I.C. SYSTEM, INC.

Defendant.

**CV-12 5604**

**DEARIE, J.**

**LEVY, M.**

## CLASS ACTION COMPLAINT

### *Introduction*

1. Plaintiff Mordechai Palace seeks redress for the illegal practices of I.C. System, Inc. in which it unlawfully engaged in the collection of consumer debts in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA"), and the Telephone Communications Privacy Act.

### *Parties*

2. Plaintiff is a citizen of the State of New York who resides within this District.

3. Plaintiff is a consumer as that term is defined by Section 15 U.S.C. § 1692(a)(3) of the FDCPA.

4. The alleged debt that Defendant sought to collect from the Plaintiff involves a consumer debt.

5.  Upon information and belief, Defendant's principal place of business is located within St. Paul, Minnesota.

6.  Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

7.  Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

### Jurisdiction and Venue

8.  This Court has federal question jurisdiction under 15 U.S.C § 1692k(d) and 28 U.S.C. § 1331.

9.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, within this district.

### Allegations Particular to Mordechai Palace

10. Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiff.

11. Within the one year immediately preceding this action, the Defendant left many messages on the Plaintiff's answering machine on numerous occasions.

12. On nine occasions within the past year, Defendant made nine calls to an unauthorized wireless number belonging to Plaintiff.

13. Upon information and belief Defendant used an auto dialer and or prerecorded messages when calling the Plaintiff.

14. The callers failed to identify themselves as debt collectors attempting to collect a debt nor did they state their legal name.

-2-

15.   Upon information and belief, the said messages were either pre-scripted or pre-recorded.

16.   Defendant has engaged in a pattern of leaving messages without disclosing that the communication is from a debt collector.

17.   The said telephone messages are in violation of 15 U.S.C. §§ 1692e(10) and 1692e(11) for failing to indicate that the messages were from a debt collector which constitutes a deceptive practice.

18.   Defendant caused Plaintiff to incur charges for Defendant's collection communications when Plaintiff had no reason to know the communication's purpose.

19.   Defendant was prohibited from placing a call that will cause a charge to Plaintiff without having notified Plaintiff to expect it and without having announced its collection purpose.

20.   Defendant called Plaintiff's wireless phone number and Plaintiff was charged a toll on all those incoming calls.

21.   Plaintiff was not alerted to the calls beforehand.

22.   The said telephone messages are in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(5).

## AS AND FOR A FIRST CAUSE OF ACTION

*Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of himself and the members of a class, as against the Defendant.*

23.   Plaintiff re-states, re-alleges, and incorporates herein by reference, paragraphs one (1) through twenty two (22) as if set forth fully in this cause of action.

24.   This cause of action is brought on behalf of Plaintiff and the members of two classes.

25.   Class A consists of all persons whom Defendant's records reflect resided within the
      State of New York who received telephonic messages from Defendant within one year
      prior to the date of the within complaint up to and including the date of the filing of this
      Complaint; (a) involving telephone messages which were placed without setting forth
      that the communication was from a debt collector and without stating their legal name;
      and (b) that the telephone messages were in violation of 15 U.S.C. §§ 1692e(10) and
      1692e(11).

26.   Class B consists of all persons whom Defendant's records reflect resided in New York
      and were left telephonic messages from Defendant within one year prior to the date of
      the within complaint up to the date of the filing of the complaint; (a) the telephone
      messages were placed to a service where the consumer was charged for the calls, and (b)
      that the telephone messages were in violation 15 U.S.C. § 1692f(5).

27.   Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and
      preferable in this case because:

      (a)   Based on the fact that form telephonic are at the heart of this litigation, the class
            is so numerous that joinder of all members is impracticable.

      (b)   There are questions of law and fact common to the class and these questions
            predominate over any question(s) affecting only individual class members. The
            principal question presented by this claim is whether the Defendant violated the
            FDCPA.

-4-

(c)   The only individual issue involves the identification of the consumers who received such telephonic messages (*i.e.* the class members). This is purely a matter capable of ministerial determination from the records of the Defendant.

(d)   The claims of the Plaintiff are typical of those of the class members. All of the respective class claims are based on substantially similar facts and legal theories.

(e)   .- The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

28.   A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. § 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

29.   If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

30.   Collection attempts, such as those made by the Defendant are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

-5-

*Violations of the Fair Debt Collection Practices Act*

31. The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

32. Because the Defendant violated of the Fair Debt Collection Practices Act, the Plaintiff and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment in Plaintiff's favor and against the Defendant and award damages as follows:

    (a)    Statutory and actual damages provided under the FDCPA, 15 U.S.C. § 1692(k); And

    (b)    Attorney fees, litigation expenses and costs incurred in bringing this action; and

    (c)    Any other relief that this Court deems appropriate and just under the circumstances.

## AS AND FOR A SECOND CAUSE OF ACTION

*Violations of the Telephone Consumer Protection Act brought by Plaintiff*

33. Plaintiff re-states, re-alleges, and incorporates herein by reference, paragraphs 1-8 as if set forth fully in this Cause of Action.

34. The Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by initiating nine telephone calls to the Plaintiff's wireless telephone number using an artificial and/or pre-recorded voice to deliver messages without having the consent of the Plaintiff to leave such messages.

35. Defendant has repeatedly violated the TCPA by the calls made to Plaintiff, specifically the numerous calls by illegal automatic dialers, predictive dialers, and/or pre-recorded

messages that have been unleashed against Plaintiff by Defendant, also without having included the proper name of the Defendant or any name for that matter.

36. There is no exception or justification for the numerous violations of the TCPA by Defendant as Plaintiff has not consented to the use of the wireless telephone number at issue where the Plaintiff was charged for each call.

37. Each call is a separate violation and entitles Plaintiff to statutory damages against Defendant in the amount of $500.00 per call.

38. Plaintiff asserts that since the violations were made intentionally or recklessly that the violations be assessed a statutory damage of $1,500.00 per call. 47 U.S.C. § 227(b)(3).

39. All actions taken by Defendant were taken with malice, were done willfully, recklessly and/or were done with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the TCPA and/or that knew or should have known that its actions were in reckless disregard of the TCPA. Courts have found collection agencies have willfully or knowingly violated the TCPA simply by calling any Plaintiff on his/her cell phone using a pre-recorded voice, regardless of whether it knew it was violating the law. (*Sengenberger v. Credit Control Services, Inc.*, 2010 U.S. Dist. LEXIS 43874)

40. This action is brought on behalf of Plaintiff and the members of two classes.

41. Class A consists of consumers who were left a telephone message concerning a consumer debt without having been informed of the Defendant's true name.

42. Class A consists of all persons whom Defendant's records reflect resided in the United States and who received telephonic messages from Defendant's representatives within

-7-

one year prior to the date of the within complaint up to the date of the filing of the complaint without the Defendant disclosing its true name; (a) the telephone messages were placed to a consumer seeking payment of a consumer debt; and (c) that the telephone messages were in violation 47 U.S.C. § 227.

43. Class B consists of consumers who were left a telephone message concerning a consumer debt on a cell phone or other method whereby the class member incurred a cost for the receipt of the message.

44. Class B consists of all persons whom Defendant's records reflect resided in the United States and who received telephonic messages from Defendant's representatives within one year prior to the date of the within complaint up to the date of the filing of the complaint where the consumer incurred a charge for the messages; (a) the telephone messages were placed to a consumer seeking payment of a consumer debt; and (c) that the telephone messages were in violation 47 U.S.C. § 227.

45. Pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), a class action is appropriate and preferable in this case because:

(A) Based on the fact that telephonic messages are at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

(B) There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the Defendant violated the TCPA.

(C) The only individual issue is the identification of the consumers who received the telephonic messages, (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendant.

(D) The claims of the Plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

(E) The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection-abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

46.     A class action is superior for the fair and efficient adjudication of the class members' claims.   The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

47.     If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure.

48.     Telephonic messages, such as those left by the defendant are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

49.     The Defendant has repeatedly violated the TCPA by failing to leave the legal name of the Defendant in the messages left for the Plaintiff as states as follows in 47 C.F.R. 64.1200(b)(1) states:

"(b) All artificial or prerecorded telephone messages shall:

-9-

At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with State Corporation Commission (or comparable regulatory authority) must be stated. The FCC further provided that:

50. With respect to the caller's name, the prerecorded message must contain, at a minimum, the legal name under which the business, individual or entity calling is registered to operate. The Commission recognizes that some businesses use "d/b/as" or aliases for marketing purposes. The rule does not prohibit the use of such additional information, provided the legal name of the business is also stated."

51. The FCC did not intend to exempt automated collection calls from the requirements of 47 C.F.R. 64.1200(b)(1), even if consent was given in the case where the debt collector failed to leave the legal name of the company. (*Sengenberger v. Credit Control Services, Inc.*, 2010 U.S. Dist. LEXIS 43874)

52. Defendant has repeatedly violated the TCPA by the calls made to Plaintiff specifically the numerous calls by illegally by not stating its legal name in its prerecorded messages in violation of the Telephone Consumer Protection Act.

### Violations of the Telephone Communications Privacy Act

53. The Defendant has repeatedly violated the TCPA by failing to leave the legal name of the Defendant in the messages left for the Plaintiff as states as follows in 47 C.F.R. 64.1200(b)(1) states:

"(b) All artificial or prerecorded telephone messages shall:

At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with State Corporation Commission (or comparable regulatory authority) must be stated. The FCC further provided that:

With respect to the caller's name, the prerecorded message must contain, at a minimum, the legal name under which the business, individual or entity calling is registered to operate. The Commission recognizes that some businesses use "d/b/as" or aliases for marketing purposes. The rule does not prohibit the use of such additional information, provided the legal name of the business is also stated."

54.   The FCC did not intend to exempt automated collection calls from the requirements of 47 C.F.R. 64.1200(b)(1), even if consent was given in the case where the debt collector failed to leave the legal name of the company.  (Sengenberger v. Credit Control Services, Inc., 2010 U.S. Dist. LEXIS 43874)

55.   Defendant has repeatedly violated the TCPA by the calls made to Plaintiff specifically the numerous calls by illegally by not stating its legal name in its prerecorded messages in violation of the Telephone Consumer Protection Act.

56.   The actions of the Defendant violate the TCPA.

57.   Because the Defendant intentionally violated the TCPA, the Plaintiff is entitled to damages in accordance with the TCPA namely $1500 for each call where the Defendant failed to obtain prior consent from the Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor

and against the Defendant and award damages as follows:

> (a) Statutory damages provided under the TCPA and injunctive relief;

> (b) Any other relief that this Court deems appropriate and just under the

> circumstances.

Dated: Cedarhurst, New York
November 1, 2012

Adam J. Fishbein, P.C. (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
483 Chestnut Street
Cedarhurst, New York 11516
Telephone (516) 791-4400
Facsimile (516) 791-4411

Plaintiff requests trial by jury on all issues so triable.

Adam J. Fishbein (AF-9508)

-12-

ADAM J. FISHBEIN, P.C.
ATTORNEY AT LAW
483 CHESTNUT STREET
CEDARHURST, NEW-YORK 11516

I.C. SYSTEM, INC.
444 HIGHWAY 96 EAST,
ST. PAUL, MN 55127-2557



# ANGELA F. HOOVER, Plaintiff
## v.
## MIDLAND CREDIT MANAGEMENT, INC, Defendant
### Civil Action No. 10-cv-06856
### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA
### Date: March 30, 2012

APPEARANCES:

TARA L. PATTERSON, ESQUIRE
On behalf of Plaintiff

ANDREW M. SCHWARTZ, ESQUIRE
On behalf of Defendant

OPINION

JAMES KNOLL GARDNER
United States District Judge

This matter is before the court on Defendant, Midland Credit Management, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint, which motion to dismiss was filed June 6, 2011.[1] Plaintiff's Opposition to Defendant's Motion to Dismiss, which opposition was filed June 21, 2011.[2] The Reply of Defendant Midland Credit Management, Inc. to Plaintiff's Opposition to Motion to Dismiss was filed on July 8, 2011. On July 22, 2011

Page 2

the Sur-Reply of Plaintiff, Angela Hoover, in Further Opposition to Defendant's Motion to Dismiss was filed.

After the motion, opposition, reply, and sur-reply were filed and this matter was under advisement, the parties sought leave to provide supplemental memorandum regarding the decision of United States Magistrate Judge Thomas M. Blewitt of the United States District Court for the Middle District of Pennsylvania in the matter of James Gula v. Midland Credit Management, Inc., Civil Action No. 2010-cv-02241 (M.D.Pa. February 1, 2012).[3] By the Order dated and filed February 13, 2012, I directed the Clerk of Court to file the parties supplemental materials, and on February 14, 2012 he did so.

Page 3

## SUMMARY OF DECISION

For the reasons expressed below, I grant defendant's motion to dismiss plaintiff's Amended Complaint and dismiss it with prejudice.

I grant defendant's motion and dismiss plaintiff's claim that defendant violated Section 1692d of the Fair Debt Collection Practices Act ("FDCPA") (which prohibits harassment by a debt collector) because plaintiff failed to provide factual averments supporting a reasonable inference that defendant's conduct was meant to harass or annoy her.

I grant defendant's motion and dismiss Ms. Hoover's claim that defendant violated Section 1692e of the FDCPA (which prohibits false, deceptive or misleading representations by a debt collector) because I conclude that defendant's Settlement Letter satisfies the notification requirement of Section 1692e(11) (that the letter is being sent to collect a debt), and because the Settlement Letter is not deceptive and not violative of Section 1692e(10) (which prohibits false representations or deceptive means to collect a debt).

Finally, I grant defendant's motion and dismiss plaintiff's claim that defendant violated Section 1692f of the FDCPA (which prohibits unfair or unconscionable means to collect a debt) because the Amended Complaint fails to plead facts which support a reasonable inference that defendant's conduct violated

Page 4

Section 1692f, and which are not redundant to the factual averments that plaintiff contends amount to violations of Sections 1692d and 1692e.

## JURISDICTION

This court has jurisdiction in this matter pursuant to 15 U.S.C. § 1692k(d)[4] and 28 U.S.C. § 1331 because plaintiff's Amended Complaint alleges that defendant violated the federal Fair Debt Collection Practices Act, and thus poses a federal question.

## VENUE

fastcase

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in Strasburg, Lancaster County, Pennsylvania, which is within this judicial district.

## PROCEDURAL HISTORY

Plaintiff Angela F. Hoover initiated this action on November 22, 2010 by filing a one-count Complaint against defendant Midland Credit Management, Inc., which alleged that defendant had violated the Fair Debt Collection Practices Act,

Page 5

15 U.S.C. §§ 1692-1692p. In her Complaint, plaintiff demanded a trial by jury.

By my Order dated and filed February 10, 2011, I approved a stipulation submitted by the parties which gave defendant until February 14, 2011 to respond to plaintiff's Complaint.

On February 14, 2011 the Answer to Plaintiff's Complaint with Affirmative Defenses by Defendant, Midland Credit Management, Inc. was filed.

On February 18, 2011 an arbitration hearing in this matter was scheduled for June 16, 2011.

On March 14, 2011 defendant filed a motion for judgment on the pleadings. By my Order dated April 28, 2011 and filed April 29, 2011, I dismissed the motion for judgment on the pleadings as moot.

On May 4, 2011 the arbitration hearing scheduled for June 16, 2011 was cancelled; and plaintiff, on May 27, 2011, filed her Amended Complaint. On June 6, 2011, Defendant filed its motion to dismiss plaintiff's amended complaint, which motion is now before this court for disposition. Hence this Opinion.

## STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6)

Page 6

motion requires the court to examine the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated

in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8(a)(2) "[does] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[2]

Page 7

In determining whether a plaintiff's complaint is sufficient, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief." Fowler, 578 F.3d at 210 (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory or 'bare-bones' allegations will [not] survive a motion to dismiss," Fowler, 578 F.3d at 210, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips, 515 F.3d at 231. Nonetheless, to survive a 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Id. (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotation omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. Fowler, 578 F.3d at 210. Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. Id. at 210-211.

Page 8

fastcase

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 211 (quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).[6]

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." Iqbal, ___ U.S. at ___, 129 S.Ct. at 1950-1951, 178 L.Ed.2d at 884-885 (internal quotations omitted).

A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and

Page 9

unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

## FACTS

Based upon the averments in plaintiff's Amended Complaint, which I must accept as true for purposes of this Opinion under the applicable standard of review discussed above, the pertinent facts are as follows.

Angela F. Hoover is an adult individual who resides in Strasburg, Lancaster County, Pennsylvania. Midland Credit Management, Inc. ("MCM") is a national debt collection company that sought to collect a consumer debt from Ms. Hoover.[7] Ms. Hoover's original creditor, on whose behalf MCM sought to collect the debt, was "Action Card".[8]

On December 10, 2009 MCM sent a Settlement Letter to Ms. Hoover. The Settlement Letter is a single page document with text on both the front and reverse side of the document.[9] Many of the "Factual Allegations" found in paragraphs 15 through 35 of the Amended Complaint are, in substance, Ms. Hoover's characterizations of the Settlement Letter.

Page 10

The Settlement Letter is a document which speaks for itself. However, plaintiff avers the following facts about the Settlement Letter:

(A) MCM does not identify itself as a "debt collector" on the front of the Settlement Letter;[10] (B) MCM used "three different colors of font, six areas of blue highlighting, four areas of grey highlighting, seven text boxes, eight areas of bold font, four areas of all capitalized font, italicized font, different sizes of font and underlined font";[11] (C) The "back of defendant's letter is markedly different than the front of the letter";[12] (D) The Settlement Letter states that "[s]pecial offers are now available to help you resolve your unpaid ACTION CARD account";[13] (E) The Settlement Letter gave Ms. Hoover three options concerning repayment of her debt;[14] (F) The Settlement Letter lists several "Benefits of Paying!" -- "We will stop applying interest to your account!", "Your credit report will be updated with the payments made!", and "Once you make you agreed-upon payments to settle your account, your credit report will be updated as 'Paid in Full'!".[15]

Page 11

Ms. Hoover avers that MCM established the layout of this Settlement Letter "with the intent to mask its true identity as a debt collector" and "solely to draw and hold the reader's attention to its demand for payment".[16]

The following observation about the Settlement Letter is central to plaintiff's claim that this Settlement Letter violates the Fair Debt Collection Practices Act, specifically Section 1692e. Approximately three-quarters of the way down the front side of the Settlement Letter, there is a horizontal line running across the width of the page which delineates the "PAYMENT COUPON" from the body of the Settlement Letter. Just above that line appears the following: "PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION".

The only thing that appears on the reverse side of the settlement letter is following: "IMPORTANT DISCLOSURE INFORMATION", just below which

is a text box stating "This is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose."

In addition to the Settlement Letter received from MCM, Ms. Hoover also avers that "upon information and belief, Defendant began contacting Plaintiff on her home telephone in its continued efforts to collect an alleged debt", and that

### Page 12

"Defendant's actions in attempting to collect the alleged debt were harassing, and highly deceptive."[17] While Ms. Hoover avers that she believes MCM contacted her on her home telephone, Ms. Hoover has made no averments regarding either the frequency, timing, or substance any alleged phone calls from MCM.

## DISCUSSION

Plaintiff's Amended Complaint contain a single count (Count I) which alleges that defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p. Specifically, plaintiff claims that defendant violated 15 U.S.C. §§ 1692d-f.[18]

### Section 1692d

Section 1692d of the Fair Debt Collection Practices Act provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d further states that "the following conduct is a violation of this section":

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader....

### Page 13

> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy,

abuse, or harass any person at the called number.

15 U.S.C. § 1692d(1), (2), (5).

Plaintiff's Amended Complaint does not clearly specify what particular conduct by defendant she alleges violated Section 1692d. However, plaintiff's brief in opposition reveals that Ms. Hoover's Section 1692d claim is grounded in the telephone call or calls which Ms. Hoover alleges that MCM made to her home telephone in an attempt to collect payment of her debt.[19]

Plaintiff's Amended Complaint, and specifically paragraphs 33 and 34, fail to adequately plead a violation of Section 1692d by defendant Midland Credit Management, Inc. Under the applicable pleading standard, I am required to disregard plaintiff's bare, conclusory assertions that MCM's phone communications were "harassing" or "deceptive". Fowler, 578 F.3d at 210-211. Having discarded plaintiff's bald legal conclusions, all that remains of the purported factual basis for her Section 1692d claim is the factual averment that MCM began contacting her on her home telephone in furtherance of its efforts to collect her unpaid debt.[20]

### Page 14

Nowhere in her Amended Complaint does Ms. Hoover allege that MCM ever threatened, or used profane or obscene language toward her. See 15 U.S.C. § 1692d(1)-(2). Moreover, the Amended Complaint is devoid of any factual averments concerning the timing, frequency, or substance of any phone communications between MCM and Ms. Hoover.

The determination of whether plaintiff has plead conduct by defendant constituting "actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of the calls." Shand-Pistilli v. Professional Account Services, Inc., 2010 U.S.Dist. LEXIS 75056, at *11 (E.D.Pa. July 26, 2010)(O'Neill, S.J.).

In Shand-Pistilli, my colleague Senior Judge Thomas N. O'Neill, Jr. concluded that the plaintiff had plead sufficient facts to support a reasonable inference that the purpose of defendant's repeated phone calls was to harass or annoy the plaintiff. Id. at *11-12. Conspicuous by its absence here, and its presence in Shand-Pistilli, is any averment by the plaintiff that she asked the defendant to stop

fastcase

contacting her and the defendant refused to stop once asked. Id. at *12.

Moreover, the plaintiff in Shand-Pistilli averred "continuous calls" to her home. Id. Here, by sharp contrast, Ms. Hoover merely avers that she believes MCM began contacting her on her home telephone. Ms. Hoover's Amended Complaint

Page 15

contains no averments concerning the frequency of any calls made by MCM.

Because Ms. Hoover's Amended Complaint does not aver sufficient facts to support a reasonable inference that she has a plausible claim to relief under Section 1692d, I grant MCM's motion and dismiss Ms. Hoover's claim asserted pursuant to Section 1692d.

Section 1692e

Ms. Hoover contends that MCM's Settlement Letter violates Section 1692e of the Fair Debt Collection Practices Act. Ms. Hoover "believes" that MCM overshadowed its instruction to see the reverse of the Settlement Letter for important details, and unnecessarily placed the Section 1692e(11) notice on the reverse side of the Settlement Letter "for the sole purpose of misleading unsophisticated consumers about the nature of the correspondence and Defendant's identity, and to coerce them to make payments that they otherwise would not make."[21]

Section 1692e of the FDCPA provides that "[a] debt collector may not use false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e further states that " the following conduct is a violation of this section":

Page 16

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer. (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt

collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(10)-(11).

A communication is deceptive for purposes of the FDCPA if "it can be reasonably read to have two or more different meanings, one of which is inaccurate, viewed from the perspective of the least sophisticated consumer." Reed v. Pinnacle Credit Services, LLC, 2009 WL 2461852, at *4 (E.D.Pa. August 11, 2009)(DuBois, J.).

The United States Court of Appeals for the Third Circuit requires that a district court analyze the statutory requirements of the FDCPA "from the perspective of the least sophisticated consumer." Campuzano-Burgos v. Midland Credit Management, Inc., 550 F.3d 294, 298 (3d Cir. 2008)(quoting Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008)).

Although the Third Circuit has clearly stated that the least sophisticated debtor standard "is less demanding than one

Page 17

that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor", Campuzano-Burgos, 550 F.3d at 298-299 (quoting Brown v. Card Services Center, 464 F.3d 450, 455 (3d Cir. 2006)), the least sophisticated debtor standard does not permit "bizarre or idiosyncratic interpretations of collection notices", "preserv[es] at least a modicum of reasonableness", and "presumes a basic level of understanding and willingness to read with care". Campuzano-Burgos, 550 F.3d at 299 (quoting Rosenau, 539 F.3d at 221).

Moreover, as is particularly relevant here, the Third Circuit noted that "[a]lthough established to ease the lot of the naive, the [least sophisticated debtor] standard does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their entirety." Campuzano-

fastcase

Burgos, 550 F.3d at 299 (emphasis added)(citing Federal Home Loan Mortgage Corporation v. Lamar, 503 F.3d 504, 510 (6th Cir. 2007)).

Plaintiff asserts that MCM's notification on the face of the Settlement Letter to "PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION" did not effectively advise Ms. Hoover of the important disclosure information required by Section 1692e(11).[22]

Page 18

This assertion flies in the face of the least sophisticated debtor's obligations as articulated by the Third Circuit in Campuzano-Burgos, 550 F.3d at 299. The least sophisticated debtor would read MCM's Settlement Letter to Ms. Hoover "in [its] entirety." Id. In doing so, the least sophisticated debtor would arrive at the capitalized instruction to "PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION".[23]

Upon arriving at that instruction, the least sophisticated debtor would, in exercising a "modicum of reasonableness" and "basic level of understanding", see Campuzano-Burgos, 550 F.3d at 299, turn the Settlement Letter over to examine the "IMPORTANT INFORMATION" appearing on the reverse side.[24]

Finally, upon turning to the reverse side of the Settlement Letter, the least sophisticated consumer could not have missed the only text that appears there: "IMPORTANT DISCLOSURE INFORMATION" "This is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose."[25]

Plaintiff further asserts that the Settlement Letter "does not provide Plaintiff a means of acceptance of the

Page 19

settlement offers" and thereby violates the FDCPA's prohibition against the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt".[26]

A communication is deceptive for purposes of the FDCPA if "it can be reasonably read to have two or more different meanings, one of which is inaccurate, viewed from the perspective of the least

sophisticated consumer." Reed, 2009 WL 2461852, at *4. Plaintiff asserts that the "payment stub provides no means within which to accept any of its settlement options, other than paying the entire balance."[27]

Even when viewed from the perspective of the least sophisticated debtor, plaintiff's reading of the Settlement Letter and payment coupon is not reasonable. The body of the Settlement Letter says "[s]elect one of the three options below" and provides three repayment options, each of which is highlighted in a text box appearing prominently in the middle of the Settlement Letter.

Below these three highlighted boxes, in normal font, MCM offers, "If these options don't work for you, call one of our Account Managers to help you set up a payment plan that does." Finally, although the payment coupon restates the total balance

Page 20

owed by Ms. Hoover, there is a blank line after "Amount Enclosed:".[28]

The Settlement Letter and the payment coupon attached thereto cannot reasonably be read by the least sophisticated consumer as providing only one repayment option to Ms. Hoover: the repayment of her outstanding balance in full and in one lump sum payment.

For these reasons, plaintiff's Amended Complaint fails to plead facts sufficient to support a reasonable inference that the Settlement Letter violated Section 1692e. Therefore, I grant MCM's motion and dismiss Ms. Hoover's claim that MCM violated Section 1692e of the FDCPA.

Section 1692f

Plaintiff contends that her Amended Complaint "successfully assert[s] a claim under 15 U.S.C. § 1692f."[22] However, as discussed below, Ms. Hoover's Amended Complaint fails to state a Section 1692f claim.

Section 1692f of the FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. A complaint fails to state a claim under Section 1692f unless it identifies some misconduct by the debt collector other than that which

fastcase

Page 21

provides the basis for the plaintiff's claims under other provisions of the FDCPA. Shand-Pistilli v. Professional Account Services, Inc., 2010 U.S.Dist. LEXIS 75056, at *17 (E.D.Pa. July 26, 2010)(O'Neill, S.J.).

Ms. Hoover relies on paragraph 31 of her Amended Complaint and the Settlement Letter itself in support of her Section 1692f claim.[20] Paragraph 31 of the Amended Complaint aver that

> Defendant informed Plaintiff that if she made payment arrangements it "will stop applying interest to [her] account; [her] credit report will be updated with the payments made; [and] once [she made his (sic)] agreed-upon payments to settle [her] account, [her] credit report will be updated as Paid in Full," implying that if she failed to accept payment arrangements, it would communicate with the credit bureau and assess interest on the alleged debt, regardless of the terms of the underlying agreement. See Exhibit A.[21]

Plaintiff contends that "collection of any interest that is more than the consumer legally owes and is not contained in the underlying loan agreement is a violation of § 1692f".[22]

Neither of the cases cited for this proposition in plaintiff's brief salvages Ms. Hoover's Section 1692f claim.

Page 22

Conner v. Howe is distinguishable from Ms. Hoover's case because the underlying loan agreement under which the defendant sought to collect was void, and the interest rate that the collector sought to apply -- 72% -- violated Indiana's loan-sharking statute. Conner, 344 F.Supp.2d at 1172. Nothing in paragraph 31 of the Amended Complaint (or anywhere else) alleges that Ms. Hoover's debt or the underlying credit agreement with Action Card was invalid or void. Moreover, Ms. Hoover does not allege that MCM applied or attempted to apply an interest rate greater than the rate provided for in Ms. Hoover's credit agreement.[23]

In Neild v. Wolpoff & Abromson, L.L.P., the district court concluded that the plaintiff adequately plead a violation of Section 1692f because the "[p]laintiff aver[red]...that Defendants attempted to charge plaintiff for items not specifically outlined in the agreement between Plaintiff and Discover Card." Neild, 453 F.Supp.2d at 924. The Neild court reasoned that if this averment were true, it would constitute a violation of Section 1692f(1). Id.

Here, by contrast, Ms. Hoover does not affirmatively aver that MCM charged or attempted to charge an interest rate not permitted by her credit agreement with Action Card.[24] I cannot agree with plaintiff and reasonably infer that the implied

Page 23

meaning of MCM's Settlement Letter was that MCM would charge unauthorized interest against Ms. Hoover if she did not elect to accept one of the three repayment arrangements offered in the Settlement Letter. Neither the factual averments in paragraph 31 of the Amended Complaint, nor the text of the Settlement Letter itself establish a plausible claim that MCM violated Section 1692f.

Moreover, to the extent that plaintiff's Amended Complaint alleges that defendant's Settlement Letter and calls to her home telephone violated Section 1692f in addition to violating Sections 1692d and 1692e, that allegation is insufficient to state a claim pursuant to Section 1692f. See Shand-Pistilli, 2010 U.S.Dist. LEXIS 75056, at *17.

For these reasons, I grant defendant MCM's motion and dismiss plaintiff Hoover's claim that MCM violated Section 1692f of the FDCPA.

## CONCLUSION

Plaintiff's Amended Complaint contains a single count (Count I) alleging that defendant violated Sections 1692d, 1692e, and 1692f of the FDCPA. For the reasons expressed above, I conclude that plaintiff's Amended Complaint fails to state a cause of action against defendant for violation of the Fair Debt Collection Practices Act. Because plaintiff's Amended Complaint fails to state a claim upon which relief may be granted, I grant

Page 24

defendant's motion and dismiss the Amended Complaint with prejudice.[25]



--------

Notes:

¹ Defendant filed its Memorandum of Law in
Support of Midland Credit Management, Inc.'s
Motion to Dismiss Plaintiff's Amended Complaint,
together with its motion to dismiss.

² Plaintiff's Brief in Opposition to Defendant's
Motion to Dismiss Plaintiff's Amended Complaint
was filed together with plaintiff's opposition.

³ The Amended Complaint in Gula v. Midland
Credit Management, Inc. ("Amended Gula
Complaint") is substantially similar to Ms. Hoover's
Amended Complaint in this action. Mr. Gula asserted
his Fair Debt Collection Practices Act ("FDCPA")
claim based on alleged violations of the same
provisions relied upon by Ms. Hoover here.
Moreover, the letter sent to plaintiff Gula by
defendant Midland Credit Management, Inc.
("MCM") and challenged in Mr. Gula's case is
identical in form to the letter challenged here by
plaintiff Hoover. The only differences are Mr. Gula's
"MCM Account Number", his "Original Creditor"
references, and his "Current Balance". Compare
Exhibit A, Amended Gula Complaint, with Exhibit
A, Amended Complaint.

On February 1, 2012, Magistrate Judge Blewitt
issued a Memorandum and accompanying Order and
Judgment granting MCM's motion for judgment on
the pleadings in its entirety and dismissing Mr. Gula's
claims under the FDCPA with prejudice.

I note Magistrate Judge Blewitt's well-reasoned
Memorandum and the substantial similarities
between the facts in Gula and the within matter.
Moreover, I note that the similarities in arguments
advanced by Mr. Gula and Ms. Hoover, and those
advanced by MCM in both actions, are unsurprising
because counsel for Ms. Hoover also represented Mr.
Gula, and MCM was represented by the same counsel
in both actions.

However, even absent the well-reasoned
Memorandum of Magistrate Judge Blewitt in Gula,
the existing authority, as discussed in this Opinion,
warrants my granting MCM's motion and dismissing
Ms. Hoover's Amended Complaint.

⁴ Section 1692k(d) provides that

An action to enforce any liability
created by this subchapter may be
brought in any appropriate United
States district court without regard
to the amount in controversy, or in
any other court of competent
jurisdiction, within one year from
the date on which the violation
occurs.

15 U.S.C. § 1692k(d).

⁵ The Opinion of the Supreme Court in Ashcroft
v. Iqbal, ___ U.S. ___ , ___, 129 S.Ct. 1937, 1953,
173 L.Ed.2d 868, 887 (2009), states clearly that the
"facial plausibility" pleading standard set forth in
Twombly applies to all civil suits in the federal
courts. Fowler v. UPMC Shadyside, 578 F.3d 203,
210 (3d Cir. 2009).

This showing of facial plausibility then "allows
the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged," and
that the plaintiff is entitled to relief. Fowler, 578 F.3d
at 210 (quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at
1949, 173 L.Ed.2d at 884).

As the Supreme Court explained in Iqbal, "[t]he
plausibility standard is not akin to a 'probability
requirement,' but it asks for more than a sheer
possibility that the defendant acted unlawfully."
Iqbal, ___ U.S. at ___ , 129 S.Ct. at 1949, 173
L.Ed.2d at 884.

⁶ Plaintiff asserts that "[b]ecause Defendant has
not proven beyond a doubt that no plausible claim
exists, Defendant's Motion to Dismiss must be
denied. " (Plaintiff's Brief in Opposition at page 2.)
This assertion reflects a misapprehension of each
party's burden at the pleadings stage when a
defendant seeks to dismiss a claim under Rule 12(b)
(6).

Defendant is not required to prove "beyond a
doubt", (id.), that plaintiff's complaint does not state a
single plausible claim. Rather, to survive a challenge
under Rule 12(b) (6) , plaintiff's complaint must
contain sufficient factual averments which, if taken
as true, show that plaintiff has a plausible claim to the
relief she seeks. See Phillips, 515 F.3d at 211.

Moreover, plaintiff asserts that a motion to
dismiss a claim under Rule 12(b) (6) "should not be
granted unless it is clear that the plaintiff can prove '
no set of facts' which would entitle him to relief. "

(Plaintiff's Brief in Opposition at page 6.) Plaintiff does not provide a citation for this particular assertion, but it is readily recognizable as the standard of review first articulated in Conley v. Gibson, 355 U.S. at 45-46, 78 S.Ct. at 102, 2 L.Ed.2d at 84, and finally abrogated by Bell Atlantic Corporation v. Twombly, 550 U.S. at 562-563, 127 S.Ct. at 1969, 167 L.Ed.2d at 944-945.

[7.] Amended Complaint at ¶¶ 6, 8-9.

[8.] Letter from Midland Credit Management, Inc. to "Amila F. Hoover" dated December 10, 2009 (Exhibit A, Amended Complaint) (the "Settlement Letter") . The Amended Complaint indicates that "Amila Hoover" is "an alias for Plaintiff." (Amended Complaint at ¶ 18.)

[9.] Exhibit A, Amended Complaint.

[10.] Amended Complaint at ¶¶ 19-20.

[11.] Amended Complaint at ¶ 24.

[12.] Amended Complaint at ¶ 28.

[13.] Exhibit A, Amended Complaint; Amended Complaint at ¶ 29.

[14.] Amended Complaint at ¶ 30.

[15.] Exhibit A, Amended Complaint; Amended Complaint at ¶ 31.

[16.] Amended Complaint at ¶¶ 20, 25.

[17.] Amended Complaint at ¶¶ 33-34.

[18.] Amended Complaint at ¶ 39.

[19.] See Plaintiff's Brief in Opposition at pages 16-18, citing Amended Complaint at ¶¶ 33-34.

[20.] See Amended Complaint at ¶¶ 33-34.

[21.] Plaintiff's Brief in Opposition at page 3.

[22.] Plaintiff's Brief in Opposition at page 11.

[23.] Exhibit A, Amended Complaint.

[24.] Exhibit A, Amended Complaint.

[25.] Exhibit A, Amended Complaint.

[26.] Plaintiff's Brief in Opposition at page 15 (quoting 15 U.S.C. § 1692e).

[27.] Plaintiff's Brief in Opposition at page 16.

[28.] Exhibit A, Amended Complaint.

[29.] Plaintiff's Brief in Opposition at page 19.

[30.] Plaintiff's Brief in Opposition at page 20.

[31.] Amended Complaint at ¶ 31 (brackets and quotation marks in original) (citing Exhibit A, Amended Complaint) .

[32.] Plaintiff's Brief in Opposition at page 20 (citing Conner v. Howe, 344 F.Supp.2d 1164 (S.D.Ind. 2004); Neild v. Wolpoff & Abramson, L.L.P., 453 F.Supp.2d 918 (E.D.Va. 2006)).

[33.] See Amended Complaint at ¶ 31.

[34.] See Amended Complaint at ¶ 31.

[35.] Dismissal of the plaintiff's Amended Complaint without leave to amend is within the sound discretion of this court, "but outright refusal to grant the leave without any justifying reason. . .is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

When a district court dismisses a complaint pursuant to Rule 12(b)(6), "the court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ) . I conclude that further amendment of Ms. Hoover's pleading would be futile and inequitable.

After plaintiff filed her Complaint, defendant answered and then filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) . Defendants motion for judgment on the pleadings alleged the same deficiencies in plaintiff's Complaint that defendant's motion to dismiss challenges in the Amended Complaint. Specifically, defendant's motion for judgment on the pleadings and its brief in support thereof argued, among other things, (1) that MCM's conduct as alleged was not harassing and did not violate Section 1692d; and (2) that MCM's letter was not deceptive and did not violate Section 1692e(10) , (11) . Thus, in crafting her Amended

fastcase

Complaint, Ms. Hoover and her counsel were well aware of the deficiencies alleged by MCM.

Nevertheless, the factual averments in the Amended Complaint are subs tantially the same as the factual averments in the original Complaint. (Compare Complaint at ¶¶ 15-27, with Amended Complaint at ¶¶ 15-35.) Although the "Factual Allegations" section of the Amended Complaint contains more paragraphs than the corresponding section in plaintiff's Complaint, the extra paragraphs in the Amended Complaint do not actually provide additional factual information or material upon which any of plaintiff's claims are based. I nstead, the additional paragraphs explain that "Amila F. Hoover" is an alias used by plaintiff Angela F. Hoover (Amended Complaint at ¶ 18) ; describe or characterize the appearance of the Settlement Letter (Amended Complaint at ¶¶ 21-28) , which was already attached as Exhibit A to the Complaint; and contain conclusory legal assertions (Amended Complaint at ¶ 27) .

Ultimately, Ms. Hoover's allegation that MCM violated the FDCPA arises out of the December 10,

2009 Settlement Letter and the telephone calls MCM allegedly placed to her home telephone. Despite the preview of the challenge to the substance of Ms. Hoover's allegations provided by MCM's motion for judgment on the pleadings, Ms. Hoover's amendment of her Complaint contained no new factual allegations upon which I could base a reasonable inference that MCM violated the FDCPA as alleged by Ms. Hoover. It is logical to assume that if additional factual support for Ms. Hoover's allegations existed, such facts would not have been withheld from the Amended Complaint. Thus, I conclude that further amendment of Ms. Hoover's pleadings would be futile. In sum, dismissal of plaintiff's Amended Complaint with prejudice is appropriate because the first amendment of plaintiff's Complaint proved futile, and it would be inequitable to subject defendant to further expense of time and effort responding to a third iteration of plaintiff's Complaint.

--------

fastcase